IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | Criminal No. 06-137 |
| ) | |
| JAMES KENNEY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM ORDER

CONTI, District Judge.

On July 7, 2006, pursuant to 18 U.S.C. § 3145(b), defendant James Kenney ("defendant") filed a motion for bond (Doc. No. 22). This court considered defendant's detention pursuant to a de novo review of the record before the magistrate judge and matters raised at a hearing held on August 4, 2006, at which evidence and proffers of evidence were presented. Upon a review of the record, evidence and proffers of evidence presented at the hearing, the pleadings and briefs in this case, the pretrial services report, and the arguments of counsel, this court denied on the record defendant's motion for bond for reasons set forth on the record and more fully set forth herein.

*Procedural History*

Defendant was indicted on April 18, 2006, on two counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts I and II), six counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts III, IV, V, VI, VII, VIII), one count of unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2) (Count IX), and one count of aggravated identity theft in violation of

18 U.S.C. § 1028A(a)(1) (Count X) (Doc. No. 1.).  The government filed a motion for an arrest warrant on April 18, 2006 (Doc. No. 6) and the motion was granted (Doc. No. 7).  On May 2, 2006, defendant was arrested in the District of South Carolina.  On May 19, 2006, defendant was arraigned.  (Doc. No. 10).  Pursuant to a request for detention by the government on the basis "[t]hat a serious risk exists that defendant will flee," a hearing to detain defendant was held that same day before the magistrate judge.  (Doc. Nos. 13, 18).  At the detention hearing, the magistrate judge ruled that defendant should be released on conditions that included third-party custodianship by his mother.  Defendant was to remain in the custody of the U.S. Marshals pending execution of bond papers by his mother.  The magistrate judge was subsequently informed that defendant's mother had changed her mind, did not wish to act as defendant's third-party custodian, and did not sign defendant's bond papers.  Defense counsel informed the magistrate judge that defendant waived the issue of detention at that time and would potentially seek to revisit the issue later.

On July 7, 2006, defendant filed a motion for bond requesting that defendant be released on bond, but that the court not impose two conditions the magistrate judge intended to impose, i.e., home detention and that defendant not leave Allegheny County, Pennsylvania while on bond.  (Doc. No. 22).  Defendant argued that the government failed to prove, by a preponderance of the evidence, that home detention and a restriction on leaving Allegheny County, Pennsylvania, were the least restrictive conditions needed to assure defendant's appearance in court.  A hearing on defendant's motion was originally scheduled for July 21, 2006.  Defendant filed a motion requesting a new bond hearing date due to defendant's mother being on vacation until July 31, 2006.  (Doc. No. 23).  The court granted that motion and scheduled a bond hearing for August 4,

2006. (Doc. No. 24). The government filed a response in opposition to defendant's motion for bond on July 20, 2006 arguing that defendant should be detained by reason of serious risk of flight. (Doc. No. 25). Defendant filed a reply brief on July 27, 2006. (Doc. No. 26).

The court held a hearing on the motion on August 4, 2006. Defendant, counsel for defendant, and counsel for the government attended the hearing. At the hearing, evidence and proffers of evidence were presented including, but not limited to, information concerning defendant's history and the circumstances of his arrest on this charge. The court also heard testimony from David Anderchak ("Anderchak"), United States Postal Inspector, and Dennis Martin ("Martin"), United States Pretrial Services Officer. This court denied defendant's motion on the record. On August 7, 2006, defendant filed a motion for reconsideration of the court's order on the basis that defendant believed the court had set a condition that he post a cash bond of $10,000 in violation of 18 U.S.C. § 3141(c)(2). (Doc. No. 29). On August 15, 2006, defendant renewed his objections to his detention on the record at the time of defendant's guilty plea to all counts of the indictment.

*Standard of Review*

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

*Discussion*

**A.     Legal Framework**

The structured system of the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered.

See United States v. Lemos, 876 F.Supp. 58, 59 (D.N.J. 1995).  A defendant is to be granted pretrial release on personal recognizance or on an appearance bond subject to certain conditions including that the defendant

> not commit a Federal, State, or local crime during the period of release. . . ., unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

18 U.S.C. § 3142(b).

When the government files a motion seeking the pretrial detention of a defendant, the court will hold a detention hearing.  Lemos, 876 F.Supp. at 59 ( "A condition precedent to detention without bail under subsection (e) is that a hearing be held as provided in subsection (f).").  At the hearing the court must first determine whether one of six circumstances exists.  One of those circumstances is a serious risk of the defendant's flight.  18 U.S.C. § 3142(f)(2)(A).[1]

---

[1] The other five circumstances are:
> (a) "a crime of violence, or an offense listed in section 2332b(g)(5)(B). . . ."  18. U.S.C. § 3142(f)1(A);
> (b) "an offense for which the maximum sentence is life imprisonment . . . ."  Id. § 3142(f)(1)(B);
> (c) "an offense for which a maximum term of imprisonment of ten years or more is prescribed . . . ."  Id. § 3142(f)(1)(C);
> (d) "any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph . . . ."  Id. § 3142(f)(1)(D); and
> (e) "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  Id. § 3142(f)(2)(B).

The judicial officer needs to determine by a preponderance of the evidence that one of those circumstances exists. See United States v. Gossett, 2005 U.S. Dist. LEXIS 14938, *5-6 (S.D. Ind. July 19, 2005). If it is so determined, then the judicial officer must consider whether there is any condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142. "The hallmark of the Bail Reform Act of 1984 is its requirement that an arrested person be admitted to bail only under conditions which will 'reasonably assure both the appearance of the person as required and the safety of any person and the community'." United States v. Himler, 797 F.2d 156, 158 (3d Cir. 1986). The court is charged with determining whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142(f).

The facts the court relies upon to support a finding that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required must be supported by a preponderance of the evidence, while a finding that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. As noted, the government bears the burden of showing by a preponderance of the evidence that no condition or set of conditions will reasonably assure the appearance of the defendant. Himler, 797 F.2d at 161 ("We see no reason to deviate from the traditional preponderance of the evidence standard [with respect to risk of flight] in the absence of express direction from Congress. We assume that Congress acted deliberately in setting forth the burden for a danger to the community

determination while remaining silent as to the burden for a risk of flight inquiry. Consequently, we will apply the preponderance of the evidence standard.").[2] There is no *per se* presumption that there is a serious risk of flight when a defendant is charged with identity theft or fraudulent identification. Id..

Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release in order to reasonably assure the appearance of the person. One of the conditions that a court may consider is that a defendant "execute an agreement to forfeit upon failure to appear as required, property of a sufficient unencumbered value, including money, as is reasonably necessary to assure the appearance of the person as required. . . ." 18 U.S.C. § 3142(c)(1)(B)(xi). The court, however, "may not impose a financial condition that results in the pretrial detention of the [defendant]." Id. § 3142(c)(2). The court also should impose only "the least restrictive further condition or combination of conditions, that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." Id. § 3142(c)(1)(B).

If no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial. 18 U.S.C. § 3142(e). "When the judge finds that no condition can reasonably prevent [the] defendant's flight, he or she is empowered to detain. Assuring appearance at trial long has been a proper concern of district courts." United States v. Maull, 773 F.2d 1478 (8th Cir. 1985). Section 3142(e) of the Bail Reform Act provides, in pertinent part:

---

[2] The parties agreed, on the record during the hearing on a motion for bond, that the government's burden in serious risk of flight issues is a preponderance of the evidence. Transcript of August 4, 2006 Motion Hearing ("Tr. 2") at 5.

> If, after a hearing pursuant to the provisions of subsection (f), . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial.

18 U.S.C. § 3142(e).

The court examines four factors in determining whether there are conditions of release that will reasonably assure the appearance of the person as required. 18 U.S.C. § 3142(g). The four factors are:

> (1) the nature and circumstances of the offense charged;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including –
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. . . .

18 U.S.C. § 3142(g).

The issues before the court here are whether, first, the government proved by a preponderance of the evidence that there is a serious risk that defendant will flee and second, if so, applying section 3142(g)'s factors to the instant case, the government met its burden of showing by a preponderance of the evidence that there is no condition or combination of

conditions that will reasonably assure defendant's future appearance as required.

### B. Factual Findings

The pretrial services report dated May 19, 2006 reflects that defendant has a criminal history involving convictions for numerous crimes including theft by unlawful taking, access device fraud, theft by deception and forgery. Defendant is charged in the indictment with ten counts including mail fraud, wire fraud, unauthorized use of an access device and aggravated identify theft that has a minimum penalty of two years that is to run consecutive to the otherwise applicable sentence imposed for violation of "any other provision of law." 18 U.S.C. § 1028A(b)(2); Transcript of May 19, 2006 Detention Hearing ("Tr. 1") at 2-3, 13. The instant charges involve use of other citizen's identities and personal information. Tr. 2 at 6, 23-24. At the time of his arrest on the instant charges, defendant was the subject of two warrants by a state court for outstanding child support. Tr. 1 at 4. At the time of his arrest, defendant was also on probation for crimes and was in violation of his probation conditions because he had been out-of-state for at least one year without permission or informing the appropriate authorities about his whereabouts. Pretrial Services Report; Tr. 2 at 21-22. Although he resided outside of Pennsylvania for at least one year prior to his arrest on the instant charges, the pretrial services report reflects that defendant has family ties to Allegheny County, Pennsylvania.

Defendant, under questioning, confessed to the crimes charged in the indictment. Tr. 2 at 11. Anderchak was told by defendant's mother, Virginia Bush ("Bush"), on or around May 8, 2006, that, if Anderchak recently spoke to defendant, he "lied to your face," and that she was concerned about any financial responsibility she would have as his third-party custodian because "she had been burned by him before." Id. at 12-13. Anderchak located defendant in South

8

Carolina only through a change of address form executed by defendant's girlfriend to change her postal address from Charlotte, North Carolina to a location in South Carolina. Id. at 17. Defendant's girlfriend listed both her name as well as defendant's on the change of address form. Id. Defendant was living under his own name in South Carolina. Id. at 18. Defendant also confessed to using the false name of "J.T. Bonjavingo" during the execution of the scheme as alleged in the indictment. Id. at 23.

The government had no information that defendant had failed to appear for any prior court appearances. Tr. 1 at 10. Defendant was found in South Carolina living under his own name and had not assumed a false identity to evade authorities. Tr. 1 at 9. Defendant was unaware of a federal warrant for his arrest. Id. at 10. Defendant offered no resistance at the time of his arrest and fully cooperated, including, as noted previously, confessing to his role in the charged offenses. Id. at 6, 9. Defendant stated to Anderchak that he had been "on the run" for two years prior to his arrest. Id. at 7, 10. Anderchak admitted that he did not attempt independently to verify that statement. Id. at 10.

The pretrial services office recommended the detention of defendant pending trial. Tr. 2 at 20. At the time of defendant's arrest on the instant charges, defendant was noncompliant with his probation in that he was living in South Carolina, not Pennsylvania, and the relevant probation department had no knowledge of his whereabouts. Id. The state, however, elected not to place a detainer on defendant, but only required him to report voluntarily for any proceedings concerning that violation. Id. at 4. The pretrial services officer was unable to verify any employment of defendant of any kind, including in North Carolina, South Carolina or Pennsylvania. Id. at 22. Bush initially changed her mind about serving as defendant's third-party

custodian because she was concerned about having financial responsibility for defendant's unsecured bond. Id. at 3. Martin testified that in speaking with Bush, he determined that Bush had "no desire to post any money for fear of loss, or being responsible for that" in connection with acting as defendant's third-party custodian. Id. at 20. Bush later learned that she would not have financial responsibility for defendant's bond and expressed a renewed willingness to serve as defendant's third-party custodian. Id. at 3.

### C.     Analysis

The court finds that the government met its burden for the pretrial detention of defendant in that the evidence adduced supports, by a preponderance of the evidence, the finding that defendant is a serious flight risk. This court finds that 1) defendant a) has no employment history, b) was on probation at the time he was arrested for the instant offense, and c) was in violation of his probation because he traveled out-of-state to North Carolina and South Carolina, was there for at least a year prior to his arrest in South Carolina; and the relevant authorities had no information concerning his whereabouts; 2) his mother had concerns that he would be a serious flight risk and thus did not wish to assume any financial responsibility for his bond; and 3) he confessed to the crimes charged and is facing imprisonment on one charge which will increase any sentence imposed for his other crimes by at least two years. Under those circumstances defendant is a serious flight risk.

Having determined that there is a serious risk that defendant will flee, the court will now address each of the four factors designated in Section 3142(g) in order to determine whether the government met its burden to prove that there is no condition or combination of conditions that will reasonably assure defendant's appearance as required. With respect to the first factor, the

nature and seriousness of the offense charged, the court finds that the nature of the crimes charged are those involving fraud and identity theft. Defendant was accused of engaging in a scheme to defraud using other citizen's identities and personal information. The court finds that the offenses are serious, in particular the crime of aggravated identify theft.

With respect to the second factor, the weight of the evidence against defendant is very strong. Defendant confessed to his involvement in the offenses charged and his counsel verified that defendant did, in fact, confess and wished to proceed promptly with guilty pleas in court. Tr. 2 at 27. With respect to the third factor, the history and characteristics of the person, the court notes that defendant has no verifiable employment history. At the time of his arrest, he was on state probation and was in violation of his state probation by reason of his not living in Pennsylvania and not informing the relevant probation authorities of his whereabouts. Defendant has a prior criminal record of committing acts similar to those charged in the indictment in instant case. With respect to the fourth factor – danger to any person in the community – there is no evidence that weighs in the government's factor.

The court also feels compelled to note that defendant offered no evidence or testimony to rebut the evidence offered by the government. Defendant's counsel noted at the beginning and conclusion of the hearing that defendant's mother, Bush, was available for questioning. Id. at 3,5. Bush, however, was not called as a witness and defendant did not offer any evidence to rebut the testimony of Anderchak and Martin concerning her conversations with them or her reasons for initially withdrawing her agreement to serve as a third-party custodian. The government's evidence, through the testimony of Martin and Anderchak, went unrebutted.

Defendant relies heavily on the United States Court of Appeals for the Third Circuit's

decision in United States v. Himler. 797 F.2d 156 (3d Cir. 1986). In Himler, the defendant ("Himler") had been detained pretrial. Id. at 157. At Himler's initial appearance, the government requested a $25,000 surety bond. Id. at 158. The magistrate judge, after being informed that there was an outstanding warrant for Himler's arrest in Florida as well as a detainer lodged against Himler by the Pennsylvania Department of Probation and Parole, ordered detention. Id. at 158. At a preliminary hearing, the magistrate judge found probable cause to believe Himler had produced false identification and the government moved for a detention hearing. Id. At the detention hearing, the magistrate judge found that Himler had prior convictions for false identification type offenses and that, at the time of the instant offense, Himler was on probation for similar crimes. Id. The magistrate judge concluded that, due to Himler's experience with fraudulent identification crimes, Himler would continue to engage in such conduct and was a serious risk of flight and a danger to the community. Id.

At a *de novo* hearing, the district court found that Himler had prior convictions for fraudulent identification, that Himler was on probation for a similar offense in Ohio and Florida, that an arrest warrant for similar offenses had been issued in Florida for Himler, and that the evidence supporting the instant offense warranted a finding that no condition or combination of conditions would assure the safety of the community from Himler. Id. The district court made no findings regarding risk of flight. Id.

Himler appealed the detention order. Id. The court of appeals reversed the district court's detention order and held that the Bail Reform Act "does not authorize the detention of the defendant based on danger to the community from the likelihood that he will if released commit another offense involving false identification" because the crimes defendant was charged with

were not specified in 18 U.S.C. § 3142(f)(1).  Id. at 160, 162.  Even though the district court did not make any finding with respect to risk of flight, the court of appeals further held that defendants such as Himler may only be detained for risk of flight if the record supports a finding of serious risk of flight.  Id.  The burden of proof required to such a finding, the court of appeals held, was a preponderance of the evidence.  Id. at 161.

Applying those standards to Himler's situation, the court of appeals found that a preponderance of the evidence did not support a finding that no condition or combination of conditions would reasonably assure Himler's appearance at trial.  Id.  The court of appeals noted that there is no *per se* presumption of flight when a defendant is charged with crimes involving fraudulent identification.  Id.  Himler, despite his propensity to engage in crimes of deceit, always appeared in court to answer the charges.  Id.  The government argued that by reason of outstanding warrants and detainers Himler had a motive to flee greater than in the past and required defendant's detention.  Id.

The court found that "outstanding detainers and warrants, absent other evidence, do not require pretrial detention on the charges here.  At most, temporary detention . . . may be warranted to enable the appropriate authority to act on their detainers and warrants."  Id. (emphasis added).  Finally, the government challenged "the importance of testimony by [Himler's] father that he would agree to act as custodian of his son and report any failure by his son to abide by a curfew."   Of significance here is that the court of appeals commented favorably on the promise of defendant's father "to post up to $2000 to secure his son's release, as he has done in the past."  Id. at 161-62.

Defendant argues that Himler stands for the proposition that crimes involving false

13

identification cannot serve as a basis for pretrial detention. The court agrees with that proposition but only to the extent that there is no *per se* rule requiring detention. Himler found that there is no *per se* rule that defendants charged with crimes involving fraudulent identification must be detained as a serious risk of flight. Id. at 161. While no *per se* rule applies, the court may consider the crimes charged as part of the analysis under section 3142(g) in order to determine whether there is no condition or combination of conditions that will reasonably assure defendant's appearance as required. In addition, Himler is distinguishable on its facts by reason of defendant in this case being in violation of his probation by moving out of Pennsylvania without permission and without informing the relevant authorities about his whereabouts. If defendant failed to do so under those circumstances, there is no reasonable assurance that he will stay in Pennsylvania and appear as required.

The court commented at the hearing on defendant's motion for bond that Bush's unwillingness to post a bond on defendant's behalf gave the court "pause in terms of the seriousness of the risk of flight." Tr. 2 at 29. The unwillingness of Bush to serve as custodian after agreeing to do so indicated that Bush was concerned about her son being a serious risk of flight. In Himler, the court of appeals commented favorably that, "[t]he defendant's father also promised, however, to post up to $2000 to secure his son's release, as he has done in the past." 797 F.2d at 161-62. While that factor in Himler may not have been dispositive, the court of appeals did consider it. This court finds that Bush's unwillingness – after she had agreed to be defendant's custodian – to serve as a custodian if she would have any financial responsibility for his nonappearance raises an inference that Bush considered her son a serious flight risk. Her unwillingness under those circumstances is simply another factor weighing in favor of the

14

government's argument. If she had volunteered to post a bond, however, like the father in Himler, that fact would have weighed in favor of defendant's release and may have ameliorated the concerns raised by Bush's statements to Anderchak and Martin. See Tr. 2 at 25-26.

Defendant's counsel correctly argued that the court could not impose a condition requiring Bush to post a bond for her son's release because that was a financial condition defendant would be unable to meet. See 18 U.S.C. § 3142(c)(2). The court in light of the argument did not impose as a condition of release that Bush post a bond for her son and found that "there are no conditions [on] which he can be released." Tr. 2 at 31. In Maull, the United States Court of Appeals for the Eighth Circuit quoted from the legislative history of the Bail Reform Act to address a similar issue concerning what happens when a financial condition cannot be imposed:

> "[I]f a judicial officer determines that a $50,000 bond is the only means, short of detention, of assuring the appearance of a defendant who poses a serious risk of flight, and the defendant asserts that, despite the judicial officer's finding to the contrary, he cannot meet the bond, the judicial officer may reconsider the amount of the bond. If he still concludes that the initial amount is reasonable and necessary then it would appear that there is no available condition of release that will assure the defendant's appearance. *This is the very finding which, under 3142(e), is the basis for an order of detention, and therefore the judge may proceed with a detention hearing pursuant to section 3142(f).*"

773 F.2d at 1482 (emphasis in original). In United States v. Lemos, 876 F. Supp. 58 (D.N.J. 1995), the court considered a similar argument and concluded:

> Where it has already been determined that only a certain financial condition on release will sufficiently assure defendant's appearance for trial, and it is shown that defendant cannot meet the financial condition, then, as in subsection (e), "no condition or combination of conditions will reasonable [sic] assure the appearance of the person." 18 U.S.C. 3142(e); compare S.Rep. 98-225 ("no *available* condition") (emphasis added).

Id. at 61.

After considering all factors under section 3142(g) as discussed above, this court, like the district court in United States v. McElroy, 1996 U.S. Dist. LEXIS 1354 *5 (E.D. Pa. Feb. 18, 1996)(Rendell, J.), also concludes "that no conditions are sufficient to secure the defendant's appearance at trial because electronic monitoring is not foolproof. . . ." Also, the defendant has confessed to stealing other person's identities and violated his probation by traveling out-of-state for at least one year prior to his arrest on the instant charges and not informing the relevant probation authorities of his whereabouts. Under those circumstances there is no condition or combination of conditions that will reasonably assure defendant's appearance in court.

On August 14, 2006, at the conclusion of a hearing in which defendant pled guilty to all ten counts of the indictment, defendant renewed his objections to his detention and made an oral motion for bond. Under the Bail Reform Act, once a defendant has been convicted, but not yet sentenced, the burden shifts to the defendant to show by clear and convincing evidence that he is not likely to flee or pose a danger to the community. 18 U.S.C. § 3143(a); see United States v. Strong, 775 F.2d 504, 508 (3d Cir. 1985). "For purpose of rebutting detention presumption, clear and convincing evidence is defined as more that preponderance of evidence, but less than beyond reasonable doubt." United States v. Dominquez, 1999 U.S. Dist. LEXIS 1317, *5 (E.D. Pa. Feb. 9, 1999) (citing Strong, 775 F.2d at 508). As the court found that the government met its burden, by a preponderance of the evidence, that defendant was a serious risk of flight *prior* to defendant's entry of a guilty plea and that there is no condition or combination of conditions that will reasonably assure his appearance as required and because defendant after the entry of his guilty pleas provided no additional evidence concerning his likelihood to flee, the court finds,

after the entry of defendant's guilty pleas, for the reasons noted above, that defendant did not meet his burden, by clear and convincing evidence, to establish that he is not likely to flee or that there is a condition or combination of conditions that will reasonably assure his appearance as required.

*Conclusion*

After a review of the record, and for the reasons set forth herein and at the hearing held on August 4, 2006, defendant's motion for bond (Doc. No. 22), defendant's motion for reconsideration of the denial of bond (Doc. No. 29), and defendant's oral motion for bond at the conclusion of his change of plea hearing are DENIED. This Memorandum Order constitutes the court's detention order pursuant to 18 U.S.C. § 3142(i) setting forth written findings of fact and a written statement of reasons for the detention. The court finds that the government has shown by a preponderance of the evidence that there is a serious risk that defendant will flee and that no condition or set of conditions will reasonably assure the defendant's appearance.

The court directs regarding defendant's detention that defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: August 21, 2006

cc:     Counsel of Record